Exhibit C

## FIRST PREFERRED SHIP MORTGAGE

THIS MORTGAGE, dated the _17_ day of June, 2003, by and between MR. SETH D. WAHLSTROM, having a principal residence at 5970 Route Six, Eastham, Massachusetts (hereinafter called the "Mortgagor"), the sole owner of the boat Northern Wind, formerly known as Miss Kara, hereinafter defined, and NORTHERN WIND, INC., a Massachusetts Corporation, having a principal place of business at 16 Hassey Street, New Bedford, Massachusetts (hereinafter called the "Mortgagee").

### WITNESSETH:

WHEREAS, the Mortgagor is justly obligated to the Mortgagee for the payment of One Hundred Forty Seven Thousand Dollars ($147,000) (the "Obligation"), that amount being the total of the principal and interest due upon a Promissory Note given this date (the "Agreement"), and for the purpose of securing the payment of said Obligation and the payment of any Advances as hereinafter defined, has executed and delivered this Preferred Ship Mortgage to the Mortgagee.

NOW THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt whereof is duly acknowledged, and in order to secure the payment of said Obligation, and to secure the performance of all the covenants and conditions herein contained, the Mortgagor by these presents does grant, bargain, sell, convey, transfer, mortgage, set over and confirm unto the Mortgagee all of the following described property:

The whole of that certain boat, the Northern Wind, formerly known as Miss Kara, , Coast Guard # 620851, hailing port of Orleans, Massachusetts, together with all her rigging, boats, anchors, chains, cables, tackle, apparel, pumps, equipment, and all other appurtenances thereunto belonging, and any and all additions, improvements, or replacements hereinafter made in, on or to the said vessel or any part thereof, and in, on or to its equipments and appurtenances aforesaid, all the foregoing being hereinafter referred to as the "Vessel".

TO HAVE AND TO HOLD the Vessel unto the Mortgagee, its heirs, executors, administrators, successors and assigns forever:

PROVIDED ALWAYS, and the condition of these presents in such, that if the Mortgagor shall pay, or cause to be paid, to the Mortgagee the Obligation by performance of the Work as defines in the Agreement required, then this Mortgage and the estate and rights hereby granted shall cease, determine and be void; otherwise to remain in full force and effect.

The Mortgagor hereby covenants and agrees that the vessel and all replacements hereafter made in or to the same are to be held by the Mortgagee subject to the further covenants, conditions and uses hereinafter set forth as follows:

## ARTICLE I

## THE MORTGAGOR HEREBY COVENANTS AND AGREES THAT:

Section 1.  Mortgagor is and shall continue to be a citizen of the United States as defined in Section 1 of the Shipping Act of 1916, as amended, entitled to own and operate the Vessel under its Certificate of Documentation which Mortgagor shall maintain in full force and effect. The Mortgagor lawfully owns and is lawfully possessed of the Vessel, and covenants and warrants that the same is free of all liens and encumbrances, and that the Mortgagor will warrant and defend the title and possession thereto and every part thereof for the benefit of the Mortgagee against the claims and demands of all persons whomsoever.

Section 2.

(a) All insurance policies covering the Vessel shall provide, during any period in which the Mortgagee holds a mortgage on the Vessel, that the Mortgagee shall be a loss payee, and that policy proceeds shall be payable up to the policy limits in all events to Mortgagee, regardless of any breach of warranty of or by the Mortgagor.

(b) All original policies, binders and cover notes and all endorsements and riders thereto shall contain a provision to the effect that the said Mortgagee shall receive written notice of at least ten (10) days in the event that such insurance is to be canceled or modified.

Section 3.  Neither the Mortgagor nor anyone in the Mortgagor's behalf, nor the Master of the Vessel shall have any right, power or authority to create, incur, or permit to be placed or imposed on the Vessel any liens, maritime or otherwise, whatsoever, other than for crew's wages for voyages during the preceding 30 days or salvage.

Section 4.  If a libel shall be filed against the Vessel, or if the Vessel shall be levied upon or taken into custody, or detained by any proceeding in any court or tribunal, the Mortgagor will within fifteen (15) days thereafter cause the Vessel to be released, and any lien thereon, other than this Mortgage, to be discharged. In the event a libel is filed against the Vessel, or in the event the Vessel is levied upon or taken into custody or detained by any authority whatsoever, the Mortgagor shall notify the Mortgagee forthwith by facsimile, confirmed by letter.

Section 5.  At all times, the parties will maintain and preserve the Vessel in as good condition, working order and repair as on the date of the this Mortgage as provided in the Agreement, and as required to perform its Work under the Agreement. Mortgagor shall afford Mortgagee or its authorized representative reasonable access to the Vessel for the purpose of inspecting the same.

Section 6.  The Mortgagor will pay and discharge when due and payable from time to time all taxes, assessments, governmental charges, fines and penalties imposed on the Vessel.

Section 7.   The Mortgagor will comply with and satisfy all the provisions of the Chapter 313 of Title 46, United States Code, as amended, in order to establish and maintain this Mortgage as a First Preferred Mortgage upon the Vessel and upon all renewals, improvements and replacements made on or to the same.

Section 8.   The Mortgagor will keep the Vessel documented with a proper U.S. Coast Guard Certificate of Documentation and fully inspected by the Coast Guard so as to enable it to perform the work required by the Agreement and will not suffer nor permit it to be operated in any manner prohibited by such certificate and will duly comply with all laws and regulations applicable to the Vessel and its operation.

## ARTICLE II

Section 1.   Mortgagor shall be in default hereunder upon the happening of any of the following events or conditions ("Event of Default"):

(a)   Failure by Mortgagor to observe or perform any covenant or agreement contained herein or in the Agreement which may continue more than ten (10) days after notice from the Mortgagee to Mortgagor and which impairs or impedes its ability to perform its Obligation under the Agreement; or

(b)   The libel, levy or other taking under legal process of the Vessel which shall not be released within fifteen (15) days; or

(c)   The abandonment of the Vessel or the removal or attempt to remove the Vessel beyond the limits of the United States, except on voyages made with the intention of returning to the United States without first obtaining the written authorization of the Mortgagee; or

(d)   The termination of the Mortgagor's status as a citizen of the United States; or

(e)   Dissolution in the case of a corporate or partnership Mortgagor or death in the case of an individual Mortgagor; or

(f)   The occurrence of any substantial loss, theft, damage or destruction of the Vessel which is not fully and adequately insured against as provided in the Agreement; or

(g)   Encumbrance, sale, or transfer or other disposition of the Vessel.

Section 2.   Upon the occurrence of an Event of Default, the Mortgagee may pursue any or all of the following remedies:

(a)   The Mortgagee may declare a default under the Agreement in

3

accordance with the terms:

(b) The Mortgagee may retake the Vessel without legal process wherever the same may be found, and the Mortgagor or other person in possession forthwith shall upon demand of the Mortgagee surrender to the Mortgagee possession of the Vessel.

(c) The Mortgagee may foreclose this Mortgage pursuant to the terms and provisions of Chapter 313 of Title 46, United States Code, as amended, or by other judicial process as may be provided in the Statutes.

(d) If and only if the Mortgagee is unable to find a fully qualified DBE contractor to perform the work as provided in Section 2(b), above, then the Mortgagee may sell the Vessel upon such terms and conditions as it may deem to be for its best advantage, subject however to the right of the Mortgagor to pay to the Mortgagee any sums then due under this Mortgage as hereinafter set forth causing this Mortgage to be discharged in full, including the right to sell and dispose of the Vessel free from any claim of or by the Mortgagor in accordance with the buy down provision, Pg. 7, Article III, Section 2, at public sale, after first giving notice of the time and place of sale, with a general description of the property, by publishing notice of any such sale as provided in the Federal Rules of Civil Procedure and the practice of the United States District Court having jurisdiction over the Vessel or where the Vessel is seized, and by mailing notice of such sale to the Mortgagor at the last known address of Mortgagor, and the Mortgagee may become the purchaser at any such sale.

The Mortgagor does hereby irrevocably appoint the Mortgagee the true and lawful attorney of the Mortgagor, in Mortgagor's name and stead to make all necessary transfers of the Vessel and to execute all necessary instruments of assignment and transfer, the Mortgagor hereby ratifying and confirming all that said attorney shall lawfully do by virtue hereof. Nevertheless, the Mortgagor shall, if so requested by the Mortgagee, ratify and confirm such sale by executing and delivering to the purchaser of the Vessel such proper bill of sale, conveyance, instrument of transfer and releases as may be designated in such request. This power of attorney is coupled with an interest and shall be irrevocable.

Section 3. Each and every power and remedy herein specifically given to the Mortgagee or otherwise in this Mortgage shall be cumulative and shall be in addition to every other power and remedy herein specifically given or now or hereafter existing at law, in equity, admiralty or by statute, and each and every power and remedy whether specifically herein given or otherwise existing may be exercised from time to time and as often and in such order as may be deemed expedient by the Mortgagee, and the exercise or the beginning of the exercise of any power or remedy shall not be construed to be a waiver of the right to exercise at the same time or thereafter any other power or remedy. No delay or omission by the Mortgagee in the exercise of

4

any right or power or in the pursuance of any remedy occurring upon any default as above defined shall impair any such right, power or remedy or be construed to be a waiver for any such event of default or to be any acquiescence therein; nor shall the acceptance by the Mortgagee of any security or of any payment of or on account of any installment of the note maturing after any event of default or of any payment on account of any past default be construed to be a waiver of any right to take advantage of any future event of default or of any past event of default not completely cured thereby.

Section 4.

(a) If the Mortgagee engages the services of another DBE qualified contractor to perform the Work as defined in the Agreement, then such replacement of Mortgagor by the substitute DBE qualified contractor shall operate as a complete discharge and release of Mortgagor from its Obligations under this Mortgage; provided that, Mortgagor shall be finally released only upon its execution of such instruments as may enable Mortgagee to transfer title of the Vessel to the substituted DBE qualified contractor. Any remaining obligations of Mortgagor and Mortgagee under the Agreement shall be resolved in accordance with its terms.

(b) The proceeds of any sale of the Vessel (after paying or deducting in the case of sale under any judicial proceedings the fees, costs and other charges therein), and the net earnings from any management, charter or other use of the Vessel by Mortgagee under any of the powers above specified, and the proceeds of any claim for damages on account of the Vessel received by the Mortgagee while exercising any such power, and the proceeds of any insurance on the Vessel concerned (subject to the provisions of this agreement) shall be applied as follows:

First:    To the payment of all expenses and charges, including the expenses of any sale, counsel fees, the expenses of any taking possession of the Vessel and any other expenses or advances made or incurred by Mortgagee in the protection of its rights or in the pursuance of its remedies hereunder and to the payment of any damages sustained by Mortgagee from the default or defaults of Mortgagor; and at the option of Mortgagee to provide a fund to furnish suitable indemnity against liens claiming priority over this Mortgage;

Second:    To the payment of the Obligations, and of all other sum secured hereby, with interest to the date of such payment;

Third:    Any surplus then remaining shall belong and be paid or returned to Mortgagor, and the heirs, executors, administrators, successors or assigns of Mortgagor, or to whomever shall be lawfully entitled to receive the same.

## ARTICLE III

Section 1.    Until some one or more of the events of default hereinbefore described shall happen, the Mortgagor shall be deferred and permitted to retain exclusive actual possession and use of the Vessel.

Section 2.    Amortization of Mortgage Debt.  The One Hundred Forty Seven Thousand ($147,000.00) Dollar Mortgage amount set forth herein was based upon a contract period of three years.  Mortgagor has borrowed a principal amount of One Hundred Thirty Thousand ($130,000.00) Dollars.  In addition to promising the return of this sum, Mortgagor has also agreed to pay a total of Seventeen Thousand ($17,000.00) Dollars in interest to the Mortgagee.

## ARTICLE IV

Section 1.    This Mortgage may be executed simultaneously in any number of counterparts and all such counterparts executed and delivered each as an original shall constitute but one and the same instrument.  The invalidity of any provision of this Mortgage shall not affect the remainder, which shall in such event be construed as if the invalid provisions had not been inserted.

Section 2.    All the covenants, promises, stipulations and agreements of the Mortgagor in this Mortgage shall bind the Mortgagor, and successors.  All of the covenants, promises, stipulations and agreements of the Mortgagee shall bind the Mortgagee and its assigns and shall inure to the benefit of the Mortgagee and its assigns, whether so expressed or not.  This Mortgage and the Agreement may not be assigned by the Mortgagor without the Mortgagee's express written consent.  Whenever used, the singular number shall include the plural and the plural the singular.

Section 3.    Nothing in this Mortgage shall be construed as a waiver of the preferred status of this Mortgage by the Mortgagee.  In the event that any provision of this Mortgage would, as a matter of law, operate to waive the preferred status thereof, such provision shall be deemed eliminated there from, the same for all intents and purposes as though such provision had never been inserted herein.

## ARTICLE V

For the purpose of Chapter 313 of Title 46, United Stated Code, the amount of this Mortgage is One Hundred Forty Seven Thousand ($147,000.00) Dollars, and performance of the Mortgage covenants.

IN WITNESS WHEREOF, THE MORTGAGOR has executed this Mortgage the day and year first above written.

_____       _____
Witness                                                              SETH D. WAHLSTROM

## COMMONWEALTH OF MASSACHUSETTS

Bristol, ss.                                                                                        2003

Be it known that personally appeared before me                               to me known to be the person described in and who executed the within instrument as his free act and deed.

In testimony whereof, I have hereunto set my hand this  17th  day of June

_____
Notary Public
My Commission Expires:  2-26-04

c:\wp61\agreemen\nw-wahlstrom

7