UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

-------------------------------------------------x

NORTHERN WIND, INC.,                    :

             Plaintiff,                    :

v.                                      :

F/V NORTHERN WIND (O.N. 620851),        :
her engines, tackle, apparel, appurtenances,  :
etc., *in rem*, and SETH D. WAHLSTROM,  :
*in personam*,                          :

             Defendants.                   :

                                              :

-------------------------------------------------x

C. A. NO.

**VERIFIED COMPLAINT
IN ADMIRALTY**

      NOW COMES plaintiff, NORTHERN WIND, INC., by and through its attorneys,

complaining of the above-named defendants, proceeds *in rem* against defendant vessel,

NORTHERN WIND (O.N. 620851), her engines, tackle, apparel, furniture, equipment, rigging,

and all other necessaries appurtenant thereto, to enforce a preferred mortgage lien, and *in*

*personam* against defendant, SETH D. WAHLSTROM, for any deficiency thereof, and alleges as

follows upon information and belief:

<u>Jurisdiction and Venue</u>

1.     Subject matter jurisdiction of this Honorable Court is based upon 28 U.S.C. §1333 and

          §31325(c) of the Ship Mortgage Act of 1920, as amended and recodified in Title 46,

          United States Code, sections 31301 *et seq..* Venue is proper in this district court pursuant

          to 28 U.S.C. § 1391(b). This is a case of admiralty and maritime jurisdiction as

          hereinafter more fully appears and is an admiralty and maritime claim to enforce a

          preferred mortgage lien within the meaning of Rule 9(h) of the Federal Rules of Civil

Procedure. Plaintiff invokes the maritime procedures and special relief provided in Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure for the arrest of defendant vessel.

<u>Parties</u>

2.   At all times material hereto, plaintiff, NORTHERN WIND, INC. (hereinafter referred to as "Northern Wind"), is a corporation duly organized and existing under the laws of the Commonwealth of Massachusetts, with a place of business located at 16 Hassey Street, New Bedford, Massachusetts. At all times material hereto, plaintiff was, and still is, the holder of the Promissory Note and First Preferred Ship Mortgage being sued upon herein.

3.   Defendant vessel, F/V NORTHERN WIND (*ex* MISS KARA), is a steel-hulled commercial fishing vessel of approximately 48 feet in length which is registered and documented under the laws of the United States of America, bearing Official Number 620851. Upon information and belief, the Vessel, including her engines, tackle, apparel, furniture, equipment, rigging, and all other necessaries appurtenant thereto, is now or, during the pendency of this action, will be located within the District of Massachusetts and within the jurisdiction of this Honorable Court.

4.   Defendant, SETH D. WAHLSTROM (hereinafter referred to as "Wahlstrom"), is an individual domiciliary of the Commonwealth of Massachusetts, with his residence located at 5970 Route 6, Eastham, Massachusetts. At all times material hereto, the said defendant was, and still is, the owner of the defendant Vessel, and the obligor of the Promissory Note and First Preferred Ship Mortgage being sued upon herein.

<u>Factual Allegations</u>

5.    On or about June 17, 2003, defendant Wahlstrom, for valuable consideration, executed
       and delivered a certain Loan Agreement with plaintiff, pursuant to which plaintiff made
       available to the said defendant a loan in the principal amount of USD $130,000.00 to
       finance the purchase and acquisition of the defendant Vessel.  A true and accurate copy of
       the Loan Agreement is attached hereto and incorporated herein as <u>Exhibit A</u>.

6.    The indebtedness to plaintiff is secured by a certain Promissory Note and  First Preferred
       Ship Mortgage on the Vessel, both instruments dated as of June 17, 2003, copies of
       which are attached hereto and incorporated herein as <u>Exhibits B and C</u> respectively.

7.    Thereafter, the said First Preferred Ship Mortgage was duly recorded and endorsed on the
       Vessel's Certificate of Documentation at the offices of the United States Coast Guard,
       National Vessel Documentation Center.

8.    Defendant Wahlstrom has defaulted under the Loan Agreement in various manners
       including but not limited to: (a) failing to maintain insurance on the Vessel as required
       under Section 6 the Loan Agreement; and (b) failing to make monthly payments of
       $4.070.00 to plaintiff for the months of August, September and October of 2004, as
       required under Clause 3 of the Loan Agreement.

9.    Defendant Wahlstrom has waived presentment under the terms of the Promissory Note.

10.   By reason of these premises, defendant Wahlstrom has breached the terms of the
       aforesaid Loan Agreement, Promissory Note and/or First Preferred Ship Mortgage.

-3-

11.   As a direct and proximate result of the foregoing, plaintiff has sustained damages in the amount of $76,970.00, as nearly as the same can now be estimated, together with interest, costs and reasonable attorneys' fees.

12.   Plaintiff has duly performed all duties and obligations on its part to be performed.

<u>Count I - Enforcement of First Preferred Ship Mortgage</u>
(Against the Vessel *in rem*)

13.   Plaintiff incorporates herein by reference the allegations contained in Paragraphs 1 through 12 above with the same force and effect as if set forth at length herein.

14.   By virtue of the First Preferred Ship Mortgage and the Ship Mortgage Act of 1920, as amended and recodified in Title 46, United States Code, sections 31301 *et seq.*, plaintiff holds a valid and enforceable preferred mortgage lien on the Vessel in the amount of the outstanding indebtedness secured thereby and is entitled to enforce its preferred mortgage lien against the Vessel *in rem*.

<u>Count II - Enforcement of First Preferred Ship Mortgage</u>
(Against the Vessel Owner *in personam*)

15.   Plaintiff incorporates herein by reference the allegations contained in Paragraphs 1 through 12 above with the same force and effect as if set forth at length herein.

16.   By virtue of the First Preferred Ship Mortgage and the Ship Mortgage Act of 1920, as amended and recodified in Title 46, United States Code, sections 31301 *et seq.*, defendant is liable for the amount of the outstanding indebtedness secured by the mortgaged Vessel, or any deficiency in the full payment of the said indebtedness.

WHEREFORE, plaintiff prays that this Honorable Court adjudge as follows:

(i)    That *in rem* process issue in due form of law, according the practice of this Honorable Court in matters of admiralty and maritime jurisdiction, may issue against the whole of the Vessel, and to all its components, together with all engines, machinery, tackle, apparel, appurtenances, including, but not limited to, its commercial fishing licenses, permits, limited entry rights, quotas, moratorium permits/licenses, and all other fishing rights, privileges, or entitlements arising from, issued to, attaching to, or appurtenant to said Vessel, pursuant to Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure;

(ii)    That all persons having or claiming to have any interest in the Vessel be cited to appear and answer under oath, all and singular the matter aforesaid;

(iii)    That process in due form of law according to the rules and practices of this Honorable Court in causes of admiralty and maritime jurisdiction issue against the *in personam* defendant citing him to appear and answer under oath to each and all of the matters aforesaid;

(iv)    That as to Count I, plaintiff's claim be adjudged a valid and enforceable preferred mortgage lien against the whole of the Vessel, and to all its components, together with all engines, machinery, tackle, apparel, appurtenances, including, but not limited to, its commercial fishing licenses, permits, limited entry rights, quotas, moratorium permits/licenses, and all other fishing rights, privileges, or entitlements arising from, issued to, attaching to, or appurtenant to said Vessel, and an *in rem* judgment enter in its favor against the Vessel for the full amount of its liquidated and unliquidated damages, together with prejudgment interest, costs and expenses, including reasonable attorneys' fees, and other damages which may be shown at trial;

(v)    That as to Count I, the whole of the Vessel, and to all its components, together with all engines, machinery, tackle, apparel, appurtenances, including, but not limited to, its commercial fishing licenses, permits, limited entry rights, quotas, moratorium permits/licenses, and all other fishing rights, privileges, or entitlements arising from, issued to, attaching to, or appurtenant to said Vessel, be condemned and sold to satisfy plaintiff's judgment;

(vi)    That as to Count II, judgment enter in its favor against the *in personam* defendant in the amount of its liquidated and unliquidated damages, including any outstanding deficiency which may accrue pursuant to the condemnation and sale of the Vessel, together with prejudgment interest, costs and expenses, including reasonable attorneys' fees, and other damages which may be shown at trial; and

(vii)    That plaintiff have such other and further relief as this Honorable Court and justice may deem just and proper under the circumstances.

Dated: October *12*, 2004

Respectfully submitted,

NORTHERN WIND, INC.
By its Attorneys,
NORMAN A. PELOQUIN, II, P.C.

By:

_____
Norman A. Peloquin, II, Esquire
(BBO No. 550872)
Morad Building, 460 County Street
New Bedford, MA 02740-5107
Tel. 508-991-2300
Fax 508-991-8300

## Verification

Michael T. Fernandes, hereby states under the penalty of perjury pursuant to 28 USC §1746 that:

1.    I am Michael T. Fernandes, President of plaintiff, Northern Wind, Inc.

2.    I have read the foregoing Verified Complaint and know the contents thereof, and the same are true to my knowledge, except as to those matters stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

3.    The sources of my information are the business records and documents of plaintiff, as well as my own involvement in the negotiation and execution of the underlying Loan Agreement, and my subsequent efforts to collect the debt.

I certify under the penalty of perjury that the foregoing is true and correct on this 8th day of October, 2004.

_____
Michael T. Fernandes,
President

-6-

Exhibit A

# LOAN AGREEMENT

1.       NORTHERN WIND, INC. of 16 Hassey Street, New Bedford, Massachusetts

("the Lender") hereby agrees to loan One Hundred Thirty Thousand ($130,000) Dollars

to SETH D. WAHLSTROM, of 5970 Route Six, Eastham, Massachusetts ("the

Borrower").

2.       On or before three years from the date this Loan Agreement is executed, the

Borrower agrees to pay back the Lender, in principal and interest, the total sum of One

Hundred Forty Seven Thousand ($147,000) Dollars.

3.       To accomplish this repayment, Borrower agrees to make monthly payments to the

Lender of Four Thousand Seventy ($4,070) Dollars.  Payments shall be due on the first

day of each month, beginning August 1, 2003 and continuing until the loan is fully

repaid.

4.       To further assist the Borrower in paying down the principal and interest owed to

the Lender, in addition to the monthly payments described in Paragraph 3, the Borrower

agrees that the Lender will hold back and credit the Borrower's loan account a total of

Two ($2.00) Dollars for each bushel of Surf Clams the Lender sells to the Borrower.  To

finance this loan account, the Borrower agrees that the Lender may withhold Two ($2.00)

of the Eighteen ($18.00) price for each bushel of Surf Clams sold to the Lender.  Once

this loan account accumulates to the point that it equals the total amount of principal and

interest that remains due and owing, the loan will be considered fully paid back.

5.     Once the loan has been fully repaid, the Borrower will no longer hold back any additional money related to the Surf Clam sales and the Borrower promises to execute the documents necessary to affirm that the loan has been fully repaid.

6.     The Borrower agrees that the Lender has a security interest in the vessel F/V Northern Wind, formerly known as Miss Kara.  The Borrower further agrees that the Lender may record a First Preferred Ship's Mortgage to protect its interest in the F/V Northern Wind, formerly known as Miss Kara (Coast Guard #620851).  The Borrower also promises to maintain insurance on the F/V Northern Wind, formerly known as Miss Kara, sufficient to pay back the Lender in full (principal and interest) should anything happen to the boat.  The Borrower agrees that the Lender shall be named as a secured lender on the boat's insurance policy and that the insurance policy will require notification to the Lender before the policy may be canceled or suspended.

Dated at New Bedford, Massachusetts, this  17  day of  June     2003.

By  *Seth D Wahlstrom*
SETH D. WAHLSTROM
"Borrower"

By  *Michael Fernandes*
NORTHERN WIND, INC.
Michael Fernandes, President
"Lender"

Exhibit B

# PROMISSORY NOTE

For value received, the undersigned, SETH D. WAHLSTROM, of 5970 Route Six, Eastham, Massachusetts ("the Borrower"), promises to pay to NORTHERN WIND, INC., of 16 Hassey Street, New Bedford, Massachusetts ("the Lender") on or before three years from the date this note is executed the total sum of One Hundred Forty Seven Thousand ($147,000) Dollars. This amount includes all of the principal and interest due on this three year note. Payments are to be made in accordance with the Loan Agreement executed in conjunction with this note. If the Borrower fails to pay this note in full within three years of the date this note is executed, interest will begin accruing at the rate of twelve (12%) percent per annum for all amounts that remain due and owing on the note. Borrower agrees that the F/V Northern Wind, formerly known as Miss Kara (Coast Guard #620851), shall serve as collateral for this note; and that if the Borrower should sell or refinance the F/V Northern Wind, formerly known as Miss Kara, that all amounts owed under this note shall become due and payable immediately.

In the event of any default hereunder, the Borrower shall pay all costs of collection including without limitation reasonable attorney's fees.

The Borrower waives presentment and notice of dishonor. In the case of the sale of the subject vessel demand is hereby waived.

Dated at New Bedford, Massachusetts, this _/7_ day of _June_     2003.

By _Seth D. Wahlstrom_    .
SETH D. WAHLSTROM

The within obligation is secured by a First Preferred Ship's Mortgage in the vessel F/V Northern Wind, formerly known as Miss Kara (Coast Guard #620851)

Exhibit C

## FIRST PREFERRED SHIP MORTGAGE

THIS MORTGAGE, dated the _17_ day of June, 2003, by and between MR. SETH D. WAHLSTROM, having a principal residence at 5970 Route Six, Eastham, Massachusetts (hereinafter called the "Mortgagor"), the sole owner of the boat Northern Wind, formerly known as Miss Kara, hereinafter defined, and NORTHERN WIND, INC., a Massachusetts Corporation, having a principal place of business at 16 Hassey Street, New Bedford, Massachusetts (hereinafter called the "Mortgagee").

### WITNESSETH:

WHEREAS, the Mortgagor is justly obligated to the Mortgagee for the payment of One Hundred Forty Seven Thousand Dollars ($147,000) (the "Obligation"), that amount being the total of the principal and interest due upon a Promissory Note given this date (the "Agreement"), and for the purpose of securing the payment of said Obligation and the payment of any Advances as hereinafter defined, has executed and delivered this Preferred Ship Mortgage to the Mortgagee.

NOW THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt whereof is duly acknowledged, and in order to secure the payment of said Obligation, and to secure the performance of all the covenants and conditions herein contained, the Mortgagor by these presents does grant, bargain, sell, convey, transfer, mortgage, set over and confirm unto the Mortgagee all of the following described property:

The whole of that certain boat, the Northern Wind, formerly known as Miss Kara, , Coast Guard # 620851, hailing port of Orleans, Massachusetts, together with all her rigging, boats, anchors, chains, cables, tackle, apparel, pumps, equipment, and all other appurtenances thereunto belonging, and any and all additions, improvements, or replacements hereinafter made in, on or to the said vessel or any part thereof, and in, on or to its equipments and appurtenances aforesaid, all the foregoing being hereinafter referred to as the "Vessel".

TO HAVE AND TO HOLD the Vessel unto the Mortgagee, its heirs, executors, administrators, successors and assigns forever:

PROVIDED ALWAYS, and the condition of these presents in such, that if the Mortgagor shall pay, or cause to be paid, to the Mortgagee the Obligation by performance of the Work as defines in the Agreement required, then this Mortgage and the estate and rights hereby granted shall cease, determine and be void; otherwise to remain in full force and effect.

The Mortgagor hereby covenants and agrees that the vessel and all replacements hereafter made in or to the same are to be held by the Mortgagee subject to the further covenants, conditions and uses hereinafter set forth as follows:

## ARTICLE I

## THE MORTGAGOR HEREBY COVENANTS AND AGREES THAT:

Section 1.    Mortgagor is and shall continue to be a citizen of the United States as defined in Section 1 of the Shipping Act of 1916, as amended, entitled to own and operate the Vessel under its Certificate of Documentation which Mortgagor shall maintain in full force and effect. The Mortgagor lawfully owns and is lawfully possessed of the Vessel, and covenants and warrants that the same is free of all liens and encumbrances, and that the Mortgagor will warrant and defend the title and possession thereto and every part thereof for the benefit of the Mortgagee against the claims and demands of all persons whomsoever.

Section 2.

(a)    All insurance policies covering the Vessel shall provide, during any period in which the Mortgagee holds a mortgage on the Vessel, that the Mortgagee shall be a loss payee, and that policy proceeds shall be payable up to the policy limits in all events to Mortgagee, regardless of any breach of warranty of or by the Mortgagor.

(b)    All original policies, binders and cover notes and all endorsements and riders thereto shall contain a provision to the effect that the said Mortgagee shall receive written notice of at least ten (10) days in the event that such insurance is to be canceled or modified.

Section 3.    Neither the Mortgagor nor anyone in the Mortgagor's behalf, nor the Master of the Vessel shall have any right, power or authority to create, incur, or permit to be placed or imposed on the Vessel any liens, maritime or otherwise, whatsoever, other than for crew's wages for voyages during the preceding 30 days or salvage.

Section 4.    If a libel shall be filed against the Vessel, or if the Vessel shall be levied upon or taken into custody, or detained by any proceeding in any court or tribunal, the Mortgagor will within fifteen (15) days thereafter cause the Vessel to be released, and any lien thereon, other than this Mortgage, to be discharged. In the event a libel is filed against the Vessel, or in the event the Vessel is levied upon or taken into custody or detained by any authority whatsoever, the Mortgagor shall notify the Mortgagee forthwith by facsimile, confirmed by letter.

Section 5.    At all times, the parties will maintain and preserve the Vessel in as good condition, working order and repair as on the date of the this Mortgage as provided in the Agreement, and as required to perform its Work under the Agreement. Mortgagor shall afford Mortgagee or its authorized representative reasonable access to the Vessel for the purpose of inspecting the same.

Section 6.    The Mortgagor will pay and discharge when due and payable from time to time all taxes, assessments, governmental charges, fines and penalties imposed on the Vessel.

2

Section 7.    The Mortgagor will comply with and satisfy all the provisions of the Chapter 313 of Title 46, United States Code, as amended, in order to establish and maintain this Mortgage as a First Preferred Mortgage upon the Vessel and upon all renewals, improvements and replacements made on or to the same.

Section 8.    The Mortgagor will keep the Vessel documented with a proper U.S. Coast Guard Certificate of Documentation and fully inspected by the Coast Guard so as to enable it to perform the work required by the Agreement and will not suffer nor permit it to be operated in any manner prohibited by such certificate and will duly comply with all laws and regulations applicable to the Vessel and its operation.

## ARTICLE II

Section 1.    Mortgagor shall be in default hereunder upon the happening of any of the following events or conditions ("Event of Default"):

(a)    Failure by Mortgagor to observe or perform any covenant or agreement contained herein or in the Agreement which may continue more than ten (10) days after notice from the Mortgagee to Mortgagor and which impairs or impedes its ability to perform its Obligation under the Agreement; or

(b)    The libel, levy or other taking under legal process of the Vessel which shall not be released within fifteen (15) days; or

(c)    The abandonment of the Vessel or the removal or attempt to remove the Vessel beyond the limits of the United States, except on voyages made with the intention of returning to the United States without first obtaining the written authorization of the Mortgagee; or

(d)    The termination of the Mortgagor's status as a citizen of the United States; or

(e)    Dissolution in the case of a corporate or partnership Mortgagor or death in the case of an individual Mortgagor; or

(f)    The occurrence of any substantial loss, theft, damage or destruction of the Vessel which is not fully and adequately insured against as provided in the Agreement; or

(g)    Encumbrance, sale, or transfer or other disposition of the Vessel.

Section 2.    Upon the occurrence of an Event of Default, the Mortgagee may pursue any or all of the following remedies:

(a)    The Mortgagee may declare a default under the Agreement in

3

accordance with the terms:

(b)  The Mortgagee may retake the Vessel without legal process wherever the same may be found, and the Mortgagor or other person in possession forthwith shall upon demand of the Mortgagee surrender to the Mortgagee possession of the Vessel.

(c)  The Mortgagee may foreclose this Mortgage pursuant to the terms and provisions of Chapter 313 of Title 46, United States Code, as amended, or by other judicial process as may be provided in the Statutes.

(d)  If and only if the Mortgagee is unable to find a fully qualified DBE contractor to perform the work as provided in Section 2(b), above, then the Mortgagee may sell the Vessel upon such terms and conditions as it may deem to be for its best advantage, subject however to the right of the Mortgagor to pay to the Mortgagee any sums then due under this Mortgage as hereinafter set forth causing this Mortgage to be discharged in full, including the right to sell and dispose of the Vessel free from any claim of or by the Mortgagor in accordance with the buy down provision, Pg. 7, Article III, Section 2, at public sale, after first giving notice of the time and place of sale, with a general description of the property, by publishing notice of any such sale as provided in the Federal Rules of Civil Procedure and the practice of the United States District Court having jurisdiction over the Vessel or where the Vessel is seized, and by mailing notice of such sale to the Mortgagor at the last known address of Mortgagor, and the Mortgagee may become the purchaser at any such sale.

The Mortgagor does hereby irrevocably appoint the Mortgagee the true and lawful attorney of the Mortgagor, in Mortgagor's name and stead to make all necessary transfers of the Vessel and to execute all necessary instruments of assignment and transfer, the Mortgagor hereby ratifying and confirming all that said attorney shall lawfully do by virtue hereof. Nevertheless, the Mortgagor shall, if so requested by the Mortgagee, ratify and confirm such sale by executing and delivering to the purchaser of the Vessel such proper bill of sale, conveyance, instrument of transfer and releases as may be designated in such request. This power of attorney is coupled with an interest and shall be irrevocable.

Section 3.    Each and every power and remedy herein specifically given to the Mortgagee or otherwise in this Mortgage shall be cumulative and shall be in addition to every other power and remedy herein specifically given or now or hereafter existing at law, in equity, admiralty or by statute, and each and every power and remedy whether specifically herein given or otherwise existing may be exercised from time to time and as often and in such order as may be deemed expedient by the Mortgagee, and the exercise or the beginning of the exercise of any power or remedy shall not be construed to be a waiver of the right to exercise at the same time or thereafter any other power or remedy. No delay or omission by the Mortgagee in the exercise of

4

any right or power or in the pursuance of any remedy occurring upon any default as above defined shall impair any such right, power or remedy or be construed to be a waiver for any such event of default or to be any acquiescence therein; nor shall the acceptance by the Mortgagee of any security or of any payment of or on account of any installment of the note maturing after any event of default or of any payment on account of any past default be construed to be a waiver of any right to take advantage of any future event of default or of any past event of default not completely cured thereby.

Section 4.

(a)    If the Mortgagee engages the services of another DBE qualified contractor to perform the Work as defined in the Agreement, then such replacement of Mortgagor by the substitute DBE qualified contractor shall operate as a complete discharge and release of Mortgagor from its Obligations under this Mortgage; provided that, Mortgagor shall be finally released only upon its execution of such instruments as may enable Mortgagee to transfer title of the Vessel to the substituted DBE qualified contractor. Any remaining obligations of Mortgagor and Mortgagee under the Agreement shall be resolved in accordance with its terms.

(b)    The proceeds of any sale of the Vessel (after paying or deducting in the case of sale under any judicial proceedings the fees, costs and other charges therein), and the net earnings from any management, charter or other use of the Vessel by Mortgagee under any of the powers above specified, and the proceeds of any claim for damages on account of the Vessel received by the Mortgagee while exercising any such power, and the proceeds of any insurance on the Vessel concerned (subject to the provisions of this agreement) shall be applied as follows:

First:    To the payment of all expenses and charges, including the expenses of any sale, counsel fees, the expenses of any taking possession of the Vessel and any other expenses or advances made or incurred by Mortgagee in the protection of its rights or in the pursuance of its remedies hereunder and to the payment of any damages sustained by Mortgagee from the default or defaults of Mortgagor; and at the option of Mortgagee to provide a fund to furnish suitable indemnity against liens claiming priority over this Mortgage;

Second:    To the payment of the Obligations, and of all other sum secured hereby, with interest to the date of such payment;

Third:    Any surplus then remaining shall belong and be paid or returned to · Mortgagor, and the heirs, executors, administrators, successors or assigns of Mortgagor, or to whomever shall be lawfully entitled to receive the same.

## ARTICLE III

Section 1.    Until some one or more of the events of default hereinbefore described shall happen, the Mortgagor shall be deferred and permitted to retain exclusive actual possession and use of the Vessel.

Section 2.    Amortization of Mortgage Debt.    The One Hundred Forty Seven Thousand ($147,000.00) Dollar Mortgage amount set forth herein was based upon a contract period of three years.    Mortgagor has borrowed a principal amount of One Hundred Thirty Thousand ($130,000.00) Dollars. In addition to promising the return of this sum, Mortgagor has also agreed to pay a total of Seventeen Thousand ($17,000.00) Dollars in interest to the Mortgagee.

## ARTICLE IV

Section 1.    This Mortgage may be executed simultaneously in any number of counterparts and all such counterparts executed and delivered each as an original shall constitute but one and the same instrument.  The invalidity of any provision of this Mortgage shall not affect the remainder, which shall in such event be construed as if the invalid provisions had not been inserted.

Section 2.    All the covenants, promises, stipulations and agreements of the Mortgagor in this Mortgage shall bind the Mortgagor, and successors. All of the covenants, promises, stipulations and agreements of the Mortgagee shall bind the Mortgagee and its assigns and shall inure to the benefit of the Mortgagee and its assigns, whether so expressed or not.  This Mortgage and the Agreement may not be assigned by the Mortgagor without the Mortgagee's express written consent.  Whenever used, the singular number shall include the plural and the plural the singular.

Section 3.    Nothing in this Mortgage shall be construed as a waiver of the preferred status of this Mortgage by the Mortgagee.  In the event that any provision of this Mortgage would, as a matter of law, operate to waive the preferred status thereof, such provision shall be deemed eliminated there from, the same for all intents and purposes as though such provision had never been inserted herein.

## ARTICLE V

For the purpose of Chapter 313 of Title 46, United Stated Code, the amount of this Mortgage is One Hundred Forty Seven Thousand ($147,000.00) Dollars, and performance of the Mortgage covenants.

6

IN WITNESS WHEREOF, THE MORTGAGOR has executed this Mortgage the day and year first above written.


_____          _____
Witness                                                         SETH D. WAHLSTROM

COMMONWEALTH OF MASSACHUSETTS

Bristol, ss.                                                                              2003

        Be it known that personally appeared before me                    to me known to be the person described in and who executed the within instrument as his free act and deed.

        In testimony whereof, I have hereunto set my hand this    17th   day of  June

                                          _____
                                          Notary Public
                                          My Commission Expires:   2-26-04

c:\wp61\agreemen\nw-wahlstrom

7